IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEWAYNE EGLY,<br><br>    Plaintiff,<br><br>v.<br><br>TDF CORPORATION, an Illinois corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>) |

FILED: APRIL 18, 2008
08CV 2248   NF
JUDGE GUZMAN
MAGISTRATE JUDGE COX

## COMPLAINT

Plaintiff DEWAYNE EGLY, by and through his attorneys TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP, and for his Complaint against Defendant TDF CORPORATION, states as follows:

### Parties

1. Dewayne Egly, (hereinafter "Egly") is a former employee of Defendant TDF. Egly's principal place of residence is Lake Geneva, Wisconsin.

2. TDF Corporation, (hereinafter "TDF"), is an Illinois Corporation with its principal place of business in Rock Island, Illinois. TDF is in the business of information technology solutions.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (a) because Egly and TDF are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. The Court has personal jurisdiction over TDF because it is a citizen of Illinois.

4. Upon information and belief, TDF does business in Chicago through a wholly owned subsidiary.

5. Upon Information and belief, an officer of TDF maintains an office in Naperville, Illinois.

6. Venue therefore proper in this District under 1391 (a) and 1391 (c) because TDF does business in this District.

## Factual Background

7. On August 15, 2007, Egly and TDF entered into an Employment Agreement (hereinafter "the Agreement"). (A copy of the Agreement is attached hereto as Exhibit "A").

8. Under the Agreement, TDF employed Egly as its President for an employment period beginning August 15, 2007 and ending on December 31, 2010.

9. The Agreement provides for termination of Egly by TDF prior to December 31, 2010 but only under certain circumstances. In relevant part, the Agreement provides:

> 4. *Employment Period.* The Employment Period shall end on December 31, 2010; provided that the Employment Period may be terminated sooner as follows:
>
> (a) by Employer, at any time upon a determination of Employee's unethical, illegal, or irresponsible acts, conduct by Employee likely to bring the Employer or any of its Affiliates into public disgrace or disrepute or which could reasonably subject the Employer of any of such entities to legal action, including but not limited to sexual or other illegal harassment, or Employee's repeated failure to perform duties reasonably directed by the Board or a material breach of Employee's duty of loyalty to the Employer, or any act of dishonesty or fraud with respect to the Employer;
>
> (b) By Employer on 30 days' notice if, during the Employment Period, Employer's Adjusted EBITDA does not grow at least 20% per year, as determined on June 30 of each calendar year during the Employment

2

        Period. For purposes hereof, the base annualized Adjusted EBITDA as of June 30, 2007 is $1,225,882.60 (i.e., actual six-months results multiplied by 2)..

    (c)    By Employer on 30 days' notice if Employer's annualized, Adjusted EBITDA for any two consecutive calendar quarters drops below the Adjusted EBITDA for the prior completed calendar year. Employer must exercise such termination right within 30 day's [sic] following the end of the relevant fiscal quarter;

10.    On November 16, 2007, TDF sent to Egly a letter signed by Augie K. Fabela, Sr., Chief Executive Officer of TDF, purporting to terminate Egly's employment with TDF. (A copy of Defendants' November 16, 2007 letter is attached hereto as Exhibit "B".)

11.    Egly has not engaged in any of the activities set out in Clause 4(a) of the Agreement above, nor does the purported termination letter make any such allegation.

12.    As Egly's employment with TDF began August 15, 2007, the time frame provided for in Clause 4(b) and (c) for the evaluation of Egly's performance had not yet come to pass as of November 16, 2007 when TDF sent the purported termination letter.

13.    The purported termination letter failed to provide an adequate basis for Egly's termination, and in doing so, it breaches the Agreement.

## COUNT I
## Breach of Contract

14.    The allegations of paragraphs 1 through 11 above are incorporated herein by reference with the same force and effect as if set forth below.

15.    TDF does not have sufficient bases to terminate Egly's employment under the Agreement.

16. Egly has fully performed all of the obligations under the Agreement and was ready, willing and able to continue said performance if allowed.

17. Egly's employment under the Agreement can be terminated by TDF prior to December 31, 2010 for the reasons outlined in paragraphs (a), (b), and (c) of Clause 4, Employment Period, of the Agreement.

18. In TDF's November 16, 2007 letter, which purports to terminate Egly's employment under the Agreement, TDF failed to allege that Egly engaged in any of the activities set forth in paragraph (a) of Clause 4.

19. As of November 16, 2007, the date of TDF's letter, which purports to terminate Egly's employment under the Agreement, the time frame established by Clause 4 (b) and (c) (one year or two consecutive quarters, respectively) for the evaluation of Egly's performance had not come to pass.

20. As Egly's employment under the Agreement can be terminated by TDF prior to December 31, 2010 only for the reasons outlined in paragraphs (a), (b), and (c) of Clause 4, Employment Period, of the Agreement, the TDF's' November 16, 2007 letter has failed to provide an adequate basis for Egly's termination, and in doing so, breaches the Agreement.

21. Egly has been damaged by TDF's material breach of contract.

WHEREFORE, Plaintiff DEWAYNE EGLY respectfully requests judgment in his favor and against Defendant TDF CORPORATION, in an amount in excess of seventy-five thousand dollars, $75,000.00, plus prejudgment interest, and all court costs and attorneys' fees incurred as a result of the prosecution of this action and any other relief this Honorable Court may deem just and proper.

DEWAYNE EGLY

By: s/ John W. Carver
    One of His Attorneys

John W. Carver
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
Tel.: (312) 627-4000

MK / 323422

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made as of August 15, 2007 (this "Agreement"), between TDF Corporation, an Illinois corporation ("Employer"), and DeWayne Egly ("Employee").

## AGREEMENT

In consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

1. <u>Employment; Term</u>. Employer shall employ Employee and Employee accepts employment with the Employer for the period beginning on the date hereof and ending on December 31, 2010 (the "Employment Period").

2. <u>Position and Duties</u>. Employee's title shall be President and he shall perform the normal duties of such office. He shall report to the Chief Executive Officer of Employer. Throughout the Employment Period, Employee shall devote, on a full-time basis, his best efforts and business time and attention to the business and affairs of Employer. Employee shall perform his duties and responsibilities in a diligent, trustworthy, businesslike and efficient manner.

3. <u>Salary and Benefits</u>. Employee shall be paid an annual salary ("Salary") of $200,000 payable in regular installments, and subject to normal withholdings, in accordance with Employer's general payroll practices.

*Bonus*. Employee shall be entitled to a bonus based upon "Adjusted EBITDA" performance of Employer in each of 2008, 2009 and 2010 ("Bonus"). For purposes hereof, Adjusted EBITDA shall mean Employer's annual net income before, interest, taxes, depreciation and amortization, with adjustment for compensation paid to owners. Adjusted EBITDA shall be determined in accordance with GAAP and consistent with Employer's past practice. The Bonus, if earned, shall be paid within 30 days of the delivery of the audited financial statements of Employer, as prepared by Employer's independent accountants. The Bonus shall be calculated on the following parameters:

| Year | EBITDA RANGE | % of SALARY |
|------|--------------|-------------|
| 2007 | Base:$1,250,000 | NA |
| 2008 | Up to $2,250,000 | Up to 75% |
| 2009 | Up to $3,500,000 | Up to 100% |
| 2010 | Up to $4,750,000 | Up to 125% |

If in any given year the EBITDA Range is exceeded, Employee shall be entitled to the full Bonus amount. For EBITDA results achieved that are above the prior year's EBITDA Range but within the current year's EBITDA Range, the Bonus amount (i.e., % of salary) shall be reduced proportionately.

1384555v3



EXHIBIT A

*Business Expenses*. Employer shall reimburse Employee for all reasonable expenses incurred by him in the course of performing his duties under this Agreement which are consistent with the Employer's policies in effect from time to time with respect to travel, entertainment and other business expenses, subject to the Employer's requirements with respect to reporting and documentation of such expenses.

*Relocation Expenses*. Employer will pay Employee $10,000 to be used, at Employee's discretion, for relocation purposes. Such expenses may include, for example, moving expenses, hotel stays, meals, gas and other related travel expenses. If Employee terminates his employment with Employer prior to the end of the Employment Period, Employee shall reimburse Employer for the full amount of the relocation expenses paid by Employer.

*Benefits*. Employee shall be entitled to participate in all of Employer's employee benefits programs in effect from time-to-time for which senior executive employees of Employer are generally eligible, and such other benefits generally available to employees of Employer, including accrued leave and holiday pay, medical insurance and participation in Employer's 401K retirement program.

Employee's rights to any compensation and benefits described in this Paragraph 3 shall cease upon termination of the Employment Period except for such as may be required by applicable federal or state laws.

4. Employment Period. The Employment Period shall end on December 31, 2010; provided that the Employment Period may be terminated sooner as follows:

(a) by Employer, at any time upon a determination of Employee's unethical, illegal, or irresponsible acts, conduct by Employee likely to bring the Employer or any of its Affiliates into public disgrace or disrepute or which could reasonably subject the Employer or any of such entities to legal action, including but not limited to sexual or other illegal harassment, or Employee's repeated failure to perform duties reasonably directed by the Board or a material breach of Employee's duty of loyalty to the Employer, or any act of dishonesty or fraud with respect to the Employer;

(b) by Employer on 30 days' notice if, during the Employment Period, Employer's Adjusted EBITDA does not grow at least 20% per year, as determined on June 30 of each calendar year during the Employment Period. For purposes hereof, the base annualized Adjusted EBITDA as of June 30, 2007 is $1,225,882.60 (i.e., actual six-months results multiplied by 2)..

(c) by Employer on 30 days' notice if Employer's annualized, Adjusted EBITDA for any two consecutive calendar quarters drops below the Adjusted EBITDA for the prior completed calendar year. Employer must exercise such termination right within 30 day's following the end of the relevant fiscal quarter;

(d)     by Employee for any reason upon providing notice to the Employer.

5.     Change-of-Control. If, prior to the end of the Employment Period, Employer is sold (in a sale of substantially all of its assets or a sale of at least 80% of Employer's outstanding capital stock) to a Person other than an Affiliate of Employer, then Employee shall be paid (i) his Salary through December 31, 2010 in accordance with Paragraph 3, and (ii) an amount equal to 3.0% of the cash consideration paid at Closing for the assets or shares of capital stock of Employer.

6.     Confidential Information. The Employee acknowledges that the information, customer lists, employment rosters, observations and other data obtained by him while employed by Employer concerning the business or affairs of the Employer, or any Affiliate of Employer ("Confidential Information") are the property of the Employer or such Affiliate. Therefore, Employee agrees that he shall not disclose to any unauthorized person or use for his own account any Confidential Information without the prior written consent of the Board, unless and to the extent that the aforementioned matters become generally known to and available for use by the public other than as a result of Employee's acts or omissions to act. Employee shall deliver to Employer at the termination of the Employment Period, or at any other time Employer may request, all memoranda, notes, plans, records, reports, computer tapes and software and other documents and data (and Employee shall not keep any copies thereof) relating to the Confidential Information, Work Product (as defined below) or the business of the Employer or any Affiliate which he may then possess or have under his control.

7.     Inventions and Patents; Power of Attorney. Employee agrees that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports, and all similar or related information which reasonably relates to the Employer's or any of its Affiliates' actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by the Employer or its Affiliates ("Work Product") belong to the Employer or its Affiliate. Employee will promptly disclose such Work Product to the Board and perform all actions reasonably requested by the Board (whether during or after the Employment Period) to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney and other instruments). Employee hereby irrevocably designates, constitutes and appoints Employer (and all persons designated by Employer in its sole and absolute discretion) as Employee's true and lawful attorney-in-fact, and authorizes Employer and any of Employer's designees, in Employee's or Employer's name, to take any action and execute any instrument which Employer may deem necessary or advisable to accomplish the purposes of this paragraph. Employee hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney is coupled with an interest.

8.     Enforcement. If, at the time of enforcement of paragraph 6 or 7 of this Agreement, a court holds that the restrictions stated herein are unreasonable under circumstances then existing, the parties hereto agree that the maximum period, scope or geographical area reasonable under such circumstances shall be substituted for the stated period, scope or area and that the court shall be

allowed to revise the restrictions contained herein in accordance therewith. Because Employee's services are unique and because Employee has access to Confidential Information and Work Product, the parties hereto agree that money damages would be an inadequate remedy for any breach of paragraph 6 or 7 of this Agreement. Therefore, in the event a breach or threatened breach of paragraph 6 or 7 of this Agreement, the Employer or its successors or assigns may, in addition to other rights and remedies existing in their favor, apply to any court of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce, or prevent any violations of, the provisions hereof (without posting a bond or other security).

9.　　Representations.　Employee hereby represents and warrants that the execution, delivery and performance of this Agreement by Employee does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which Employee is a party or by which he is bound, including any existing employment or non-competition agreement. Employee acknowledges that he has had the opportunity to consult with legal counsel regarding the terms of this Agreement.

10.　　Definitions.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under direct or indirect common control with such Person. A Person shall be deemed to control another Person if such first Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through ownership of voting securities, by contract or otherwise.

"Person" means an individual or a corporation, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or any agency or political subdivision thereof) or other entity of any kind.

11.　　Notices.　Any notice provided for in this Agreement must be in writing and must be either personally delivered, sent by reputable overnight courier service (charges prepaid), sent by facsimile (receipt confirmed) or mailed by certified mail (postage prepaid and return receipt requested) to the recipient at the address below indicated:

To Employer:

　　TDF Corporation
　　Rock Island Arsenal, Building 131
　　PO Box 5164
　　Rock Island, Illinois 61204
　　Fax: (309) 283-0285
　　Attn: Chief Executive Officer
To Employee:

>DeWayne Egly
>1281 Masters Rd.
>Lake Geneva, WI 53147
>Email: degly@wi.rr.com

or to such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Any notice under this Agreement will be deemed to have been given when delivered personally or by overnight courier, when sent by facsimile, or if mailed, five days after deposit in the U.S. Mail.

    12.    <u>Miscellaneous Provisions</u>.

    (a)    <u>Severability</u>. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

    (b)    <u>Complete Agreement</u>. This Agreement, those documents expressly referred to herein and other documents of even date herewith embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

    (c)    <u>Successors and Assigns</u>. Except as otherwise provided herein, this Agreement shall bind and inure to the benefit of and be enforceable by Employee and the Employer and their permitted successors and assigns; provided that the rights and obligations of Employee under this Agreement shall not be assignable without the prior written consent of the Employer.

    (e)    <u>Choice of Law</u>. All questions concerning the construction, validity and interpretation of this Agreement and any exhibits hereto will be governed by the internal law, and not the law of conflicts, of the State of Illinois.

    (f)    <u>Remedies</u>. Each of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically, to recover damages and costs (including reasonable attorney's fees) caused by any breach of any provision of this Agreement and to exercise all other rights existing in its favor. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of his Agreement and that any party may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance

1384555v3

5

and/or other injunctive relief in order to enforce or prevent any violations of the provisions of this Agreement.

(g)  Amendment and Waiver.  The provisions of this Agreement may be amended and waived only with the prior written consent of the Employer and the Employee.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Agreement on the date first written above.

TDF CORPORATION

By:_____

Its: _____

EMPLOYEE:

_____
DeWayne Egly



**TDF Corporation**
Rock Island Arsenal, Building 131
PO Box 5164
Rock Island, IL 61204-5164

November 16, 2007

```
08CV2248      NF
JUDGE GUZMAN
MAGISTRATE JUDGE COX
```

Mr. DeWayne Egly
1281 Masters Road
Lake Geneva, WI 53147

Dear DeWayne,

I regret to inform you, that effective immediately, I am asking for your resignation. You are hereby relieved of all of your duties and responsibilities as President of TDF Corporation so please turn in your badge and decal sticker for your car. You can mail them to Mike Bale, Facility Security Manager.

When you were hired, our hope was to bring TDF Corporation to the next level with strong leadership skills that I thought you possessed. As President of an organization, there are a number of skills that are essential to the day-to-day activities of a company. You have not demonstrated leadership and decision making skills with TDF employees and this has been detrimental to the well being of the Company.

Unfortunately, in the 3 months time that TDF has been under your direction, we have lost 5 employees with the potential of losing 1 more. We have lost 1 contract and have the potential to lose 2 more contracts with 4 employees. I was very disappointed to see that we are losing contracts that had been secured for many years.

Ray Davisson is possibly leaving and potentially, the employees under him will go with him as well. Avolux has been operating with no direction and support what-so-ever and they feel like they are not a part of our organization.

The adjusted EBIDTA figures that you propose in your 2008 business plan are not acceptable. It concerned me deeply to see that the 1 year projection of the adjusted EBIDTA had decreased not increased which is certainly different from the figures that we discussed pursuant to our employment agreement dated August 15, 2007.

The Business Plan I requested from you was for me to share with the Board of Directors of TDF and it is incomplete, it contained only 1 year's projection and it did not show any new revenue. I was anticipating you would submit the normal business plan that includes 3 to 5 years projections.

As we discussed in the beginning, this is a full time position and in the 3 months you have been with TDF, you have been absent over 2 weeks. You are also taking short days every Monday and Friday which reduces your productivity by 1 day and sets a poor example to employees.

I am very sorry that things have not worked out and I hope that you look at this as I do, this is strictly a business decision for me. I hope friendship and neighborly relations will not be affected. Please call if you feel that it is necessary to talk.

Regards,
TDF Corporation
Augie K. Fabela, Sr., CEO



EXHIBIT B